IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CJ HOLDING CO., *et al.*,[1] | § | Case No. 16-33590 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

APPLICATION OF CJ HOLDING CO., *ET AL.*, FOR ENTRY
OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT
OF KIRKLAND & ELLIS LLP AND KIRKLAND AND ELLIS INTERNATIONAL
LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION
EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

> A HEARING WILL BE CONDUCTED ON THIS APPLICATION ON SEPTEMBER 12, 2016, AT 2:30 P.M., PREVAILING CENTRAL TIME, AT 515 RUSK AVENUE, HOUSTON, TEXAS 77002.
>
> IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS APPLICATION, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS APPLICATION. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS APPLICATION. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANTED THE RELIEF REQUESTED.
>
> REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this application (this "Application") for entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland") as their attorneys

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are: CJ Holding Co. (4586); Blue Ribbon Technology Inc. (6338); C&J Corporate Services (Bermuda) Ltd.; C&J Energy Production Services-Canada Ltd.; C&J Energy Services, Inc. (3219); C&J Energy Services Ltd.; C&J Spec-Rent Services, Inc. (0712); C&J VLC, LLC (9989); C&J Well Services Inc. (5684); ESP Completion Technologies LLC (4615); KVS Transportation, Inc. (2415); Mobile Data Technologies Ltd.; Tellus Oilfield Inc. (2657); Tiger Cased Hole Services Inc. (7783); and Total E&S, Inc. (5351). The location of the Debtors' service address is 3990 Rogerdale, Houston, Texas 77042.

**EXHIBIT 2**

effective *nunc pro tunc* to the Petition Date (as defined herein).  In support of this Application, the Debtors submit the declaration of Marc Kieselstein, the president of Marc Kieselstein, P.C., a partner of Kirkland & Ellis LLP, and a partner of Kirkland & Ellis International LLP (the "Kieselstein Declaration"), which is attached hereto as **Exhibit B** and the declaration of Danielle Hunter, the General Counsel of C&J Energy Services Ltd., which is attached hereto as **Exhibit C** (the "Hunter Declaration").  In further support of this Application, the Debtors respectfully state as follows.

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

4. On July 20, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.  On July 21, 2016, the Court entered an order [Docket No. 32] authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No entity has requested the appointment of a trustee or

2

examiner in these chapter 11 cases. On August 2, 2016, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 142].

5.  A description of the Debtors' businesses, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of Mark Cashiola in Support of Debtors' Chapter 11 Petitions and First Day Motions*, filed on July 20, 2016 [Docket No. 20], incorporated herein by reference.

### Relief Requested

6.  By this Application, the Debtors seek the entry of the Order authorizing the retention and employment of Kirkland as their attorneys in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and Kirkland effective as of March 20, 2016 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit 1** to **Exhibit A** and incorporated herein by reference.

### Kirkland's Qualifications

7.  The Debtors seek to retain Kirkland because of Kirkland's recognized expertise and extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.

8.  Kirkland has been actively involved in major chapter 11 cases and has represented debtors in many cases, including, among others: *In re Midstates Petroleum Company, Inc.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. July 1, 2016); *In re Linn Energy, LLC*, No. 16-60040 (Bankr. S.D. Tex. June 27, 2016); *In re Ultra Petroleum Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 23, 2016); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. June 22, 2016); *In re Southcross Holdings LP*, No. 16-20111 (MI) (Bankr. S.D. Tex. May 6, 2016); *In re Sherwin Alumina Company, LLC*, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Feb. 1, 2016); *In re*

3

*Magnum Hunter Resources Corp.*, No. 15-12533 (KG) (Bankr. D. Del. Jan. 28, 2016); *In re Samson Res. Corp.*, No. 15-11934 (CSS) (Bankr. D. Del. Oct. 29, 2015); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015); *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 5, 2015); *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Sept. 16, 2014); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. July 24, 2013); *In re Edison Mission Energy*, No. 12-49219 (JPC) (Bankr. N.D. Ill. Jan. 17, 2013); *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB) (Bankr. S.D.N.Y. May 31, 2012); *In re Global Aviation Holdings Inc.*, No. 12-40783 (CEC) (Bankr. E.D.N.Y. Mar. 9, 2012); *In re United Retail Group, Inc.*, No. 12-10405 (SMB) (Bankr. S.D.N.Y. Feb. 23, 2012); *In re Friendly Ice Cream Corp.*, No. 11-13167 (Bankr. D. Del. Nov. 1, 2011); *In re Neb. Book Co.*, No. 11-12005 (PJW) (Bankr. D. Del. July 21, 2011); *In re Sbarro, Inc.*, No. 11-11527 (Bankr. S.D.N.Y. May 3, 2011); *In re MSR Resort Golf Course LLC*, No. 11-10372 (Bankr. S.D.N.Y. Mar. 2, 2011); *In re Great Atl. & Pac. Tea Co.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Dec. 12, 2010); *In re Local Insight Media Holdings, Inc.*, No. 10-13677 (KG) (Bankr. D. Del. Nov. 17, 2010); *In re FGIC Corp.*, No. 10-14215 (SMB) (Bankr. S.D.N.Y. Aug. 25, 2010); *In re Innkeepers USA Trust*, No. 10-13800 (SCC) (Bankr. S.D.N.Y. Aug. 12, 2010); *In re N. Am. Petroleum Corp.*, No. 10-11707 (CSS) (Bankr. D. Del. June 21, 2010*); In re South Bay Expressway, L.P.*, No. 10-04516 (LDA) (Bankr. S. D. Cal. June 11, 2010); *In re Neff Corp.*, No. 10-12610 (SCC) (Bankr. S.D.N.Y. June 9, 2010); *In re U.S. Concrete, Inc.*, No. 10-11407 (PJW) (Bankr. D. Del. May 21, 2010); *In re Citadel Broadcasting Corp.*, No. 09-17442 (BRL) (Bankr. S.D.N.Y. Feb. 3, 2010).[2]

---

[2] Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders are available upon request to Debtors' proposed counsel.

4

9. In preparing for its representation of the Debtors in these chapter 11 cases, Kirkland has become familiar with the Debtors' businesses and many of the potential legal issues that may arise in the context of these chapter 11 cases. The Debtors believe that Kirkland is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

### Services to be Provided

10. Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors request the retention and employment of Kirkland to render the following legal services:

a. advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b. advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c. attending meetings and negotiating with representatives of creditors and other parties in interest;

d. taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e. preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f. representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g. advising the Debtors in connection with any potential sale of assets;

h. appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i. advising the Debtors regarding tax matters;

5

j. taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k. performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

**Professional Compensation**

11. Kirkland intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of the Court. The hourly rates and corresponding rate structure Kirkland will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that Kirkland uses in other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

12. Kirkland operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

13. Kirkland's current hourly rates for matters related to these chapter 11 cases range as follows:[3]

---

[3] For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency. When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable

| Billing Category[4] | U.S. Range |
|---|---|
| Partners | $875-$1,495 |
| Of Counsel | $625-$1,495 |
| Associates | $525-$945 |
| Paraprofessionals | $180-$400 |

14. Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[5]

15. Kirkland represented the Debtors during the four-month period before the Petition Date, using the hourly rates listed above. Moreover, these hourly rates are consistent with the rates that Kirkland charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

16. The rate structure provided by Kirkland is appropriate and not significantly different from (a) the rates that Kirkland charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Kirkland will perform in these chapter 11 cases.

---

conversion rate. After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein.

[4] Although Kirkland does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Kirkland will not charge a markup to the Debtors with respect to fees billed by such attorneys. Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Kirkland will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

[5] For example, like many of its peer law firms, Kirkland typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013). As set forth in the Order, Kirkland will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file any such notice with the Court.

7

17. It is Kirkland's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.[6] It is also Kirkland's policy to charge its clients only the amount actually incurred by Kirkland in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

18. To ensure compliance with all applicable deadlines in these chapter 11 cases, from time to time Kirkland utilizes the services of overtime secretaries. Kirkland charges fees for these services pursuant to the Engagement Letter, which permits Kirkland to bill the Debtors for overtime secretarial charges that arise out of business necessity. In addition, Kirkland professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

19. Kirkland currently charges the Debtors $0.16 per page for standard duplication in its offices in the United States. Kirkland does not charge its clients for incoming facsimile transmissions. Kirkland has negotiated a discounted rate for Westlaw computer-assisted legal research. Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

---

[6] More specifically, the Engagement Letter provides that the Debtors will reimburse Kirkland for all fees and expenses, including the amount of Kirkland's attorney and paralegal time at normal billing rates incurred in connection with disputes brought by or against any third party relating to legal services Kirkland provides to the Debtors. To the extent allowed, such fees should be allowed pursuant pursuant to section 328(a) of the Bankruptcy Code, which permits employment on any reasonable terms and conditions. *See* 11 U.S.C. § 328(a). *Cf. Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. ___, 135 S.Ct. 2158 (2015).

8

**Compensation Received by Kirkland from the Debtors**

20.    Per the terms of the Engagement Letter, the Debtors paid $1,000,000.00 to Kirkland, which, as stated in the Engagement Letter, constituted an "advance payment retainer" as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct and *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007). Subsequently, the Debtors paid to Kirkland additional advance payment retainers totaling $1,626,665.57 in the aggregate. As stated in the Engagement Letter, any advance payment retainers are earned by Kirkland upon receipt, any advance payment retainers become the property of Kirkland upon receipt, the Debtors no longer have a property interest in any advance payment retainers upon Kirkland's receipt, any advance payment retainers will be placed in Kirkland's general account and will not be held in a client trust account, and the Debtors will not earn any interest on any advance payment retainers.[7] A chart identifying the statements setting forth the professional services provided by Kirkland to the Debtors and the expenses incurred by Kirkland in connection therewith, as well as the advance payment retainers transferred by the Debtors to Kirkland, prior to the Petition Date is set forth in the Kieselstein Declaration.

21.    Pursuant to Bankruptcy Rule 2016(b), Kirkland has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Kirkland or (b) any compensation another person or party has received or may receive.

22.    As of the Petition Date, the Debtors did not owe Kirkland any amounts for legal services rendered before the Petition Date. Although certain expenses and fees may have been

---

[7]    The Engagement Letter permits Kirkland to retain prepetition advance payment retainers held by Kirkland as of the Petition Date rather than applying such prepetition advance payment retainers to pay postpetition fees and expenses. In light of the facts and circumstances of these chapter 11 cases, Kirkland will retain any prepetition advance payment retainers held by Kirkland as of the Petition Date and will not apply any such amounts to postpetition fees and expenses.

9

incurred but not yet applied to Kirkland's advance payment retainers, the amount of Kirkland's advance payment retainers always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

### Kirkland's Disinterestedness

23. To the best of the Debtors' knowledge and as disclosed herein and in the Kieselstein Declaration, (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Kieselstein Declaration.

24. Kirkland will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Kirkland will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

### Supporting Authority

25. The Debtors seek retention of Kirkland as their attorneys pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

10

26. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

27. The Debtors submit that for all the reasons stated above and in the Kieselstein Declaration, the retention and employment of Kirkland as counsel to the Debtors is warranted. Further, as stated in the Kieselstein Declaration, Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Kieselstein Declaration.

### Notice

28. The Debtors will provide notice of this Application to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) Greenberg Traurig, LLP as counsel to the Committee; (c) Davis Polk & Wardwell LLP and Diamond McCarthy LLP as counsel to Cortland Capital Market Services LLC as administrative agent under the Debtors' secured credit agreement and agent for the proposed debtor-in-possession financing facility; (d) Nabors Industries Ltd. and counsel thereto; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the Environmental Protection Agency; (h) the office of the attorneys general for the states in which the Debtors operate; (i) the

11

Securities and Exchange Commission; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## No Prior Request

29.     No prior request for the relief sought in this Application has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated:  August 10, 2016  
         Houston, Texas

/s/ Danielle Hunter  
Danielle Hunter  
C&J Energy Services Ltd.  
General Counsel

**Certificate of Service**

I certify that on August 10, 2016, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Stephen Thomas Schwarzbach Jr.*
One of Counsel